**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| _____ | : | |
| AMERICAN FIRE AND CASUALTY | : | |
| COMPANY, | : | |
| | : | |
| Plaintiff, | : | Civil No. 21-7668 (RBK/MJS) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| AMERICAN FAMILY HOME | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |
| _____ | | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff American Fire and Casualty Company's ("American Fire") Motion for Partial Summary Judgment (the "Motion" or "Mot.") (ECF No. 29). For the reasons set forth below, the Court **GRANTS** American Fire's Motion.

## I.     BACKGROUND

This case involves two insurance companies—American Fire and Defendant American Family Home Insurance Company ("American Family"). Both companies maintain that the other must defend Hall Construction Company, Inc. ("Hall") in an underlying personal injury suit against it (the "Underlying Action"). (*See* Mot. at 3; ECF No. 30, American Family's Response in Opposition to the Motion ("Def. Opp'n") at 1–2). To resolve that dispute, American Fire filed a complaint with this Court and now this Motion seeking a declaratory judgment that American Family must defend Hall on a primary basis in the Underlying Action and reimburse American Fire for the costs it has incurred while defending Hall to this point. (Mot. at 3).

### A.      The Underlying Action

During a construction project at the Cape May Correctional Facility, Hall, the project's

general contractor, subcontracted with Brian Trematore Plumbing & Heating, Inc.

("Trematore"). (ECF No. 29-2, Statement of Undisputed Material Facts ("MF") ¶¶ 4, 6; *see also*

ECF No. 29-6, Declaration of Michael J. Jones, Ex. C, "Underlying Complaint" ¶ 4; ECF No.

29-8, Declaration of Michael J. Jones, Ex. E, "Underlying Answer and Third-Party Complaint"

¶ 4 (admitting to allegations in Underlying Complaint ¶ 4)). According to the contract's terms

(the "Subcontract"), Trematore would, among other things, "furnish all labor" for plumbing

work on the project. (MF ¶ 6).

Additionally, the Subcontract provides:

> NOTWITHSTANDING THE CONTRACT SPECIFICATIONS, [TREMATORE] IS RESPONSIBLE FOR ITS OPERATIONS AND SUPERVISION AND COORDINATION OF ITS WORK WITH THE OPERATIONS AND WORK OF ALL OTHER TRADES AND SUBCONTRACTORS. . . . [Trematore] is responsible for the safety of its employees, and holds [Hall] harmless for any claim and defend any claim due to injury of any of its employees.

(*Id.* ¶ 7). Finally, as relevant here, the Subcontract says:

> [Trematore] agrees to provide insurance . . . for the work to be performed under this Contract. . . . The Owner, Architect, Engineer (A/E), hereinafter, and [Hall] shall be named as additional insured for all General Liability, Bodily Injury, Property Damages, Auto and Excess (Umbrella) Liability, by notification to and written verification from the Insurance Carrier, and as may be required in the Specifications. [Hall] shall be named as primary additional insured on all General Liability policies, including bodily injury, property damage, and excess liability policies, by endorsement from the insurance carrier attached to the insurance certificate.

(*Id.* ¶ 8).

John Lauer, one of Trematore's employees, claims he was injured on March 1, 2018

while working for Trematore on the Cape May project. (*Id.* ¶ 4). On February 27, 2020, Lauer

filed a personal injury lawsuit against Hall—the Underlying Action—in the Superior Court of

New Jersey, Atlantic County, Law Division. (*Id.* ¶ 3). Lauer did not name his employer, Trematore, as a defendant in the Underlying Action. (*See id.*). Hall responded on April 9, 2020 with an Answer, which includes an affirmative defense that Lauer was contributorily negligent, and a Third-Party Complaint against Trematore, alleging, among other things, that if Lauer suffered any damages in the Underlying Action, Trematore proximately caused and contributed to them. (*Id.* ¶ 9; Underlying Answer and Third-Party Complaint, Fourth Affirmative Defense, First Count ¶ 3).

**B.     The Dueling Policies**

Although the Underlying Action is relevant, we are not here to resolve its merits. Instead, this case involves two insurance policies taken out by Hall and Trematore during the Cape May construction project.

American Family issued a general commercial liability policy (the "American Family Policy") to Trematore. (MF ¶ 10). This policy contains two important provisions. First, the American Family Policy contains an Additional Insured Endorsement:

> **A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **1.** Your acts or omissions; or
>
> **2.** The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.
>
> However:
>
> **1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and
>
> **2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

(*Id.* ¶ 11; ECF No. 29-9, Declaration of Michael J. Jones, Ex. F, American Family Policy, Am. Family 0075). The Schedule for the Additional Insured Endorsement lists no specific entities by name, but it does say, "As Required By Written Contract." (MF ¶ 12; American Family Policy, Am. Family 0075).

Second, the American Family Policy has an Other Insurance provision, which reads:

**4.  Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.  Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b.  Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(MF ¶ 13; American Family Policy, Am. Family 0058). This Other Insurance provision is supplemented by an endorsement:

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary and Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

(ECF No. 30-1, American Family's Response to Statement of Undisputed Material Facts ("Def. Resp. to MF") ¶ 4; American Family Policy, Am. Family 0074).

Which brings us to American Fire, which issued a general commercial liability policy to Hall (the "American Fire Policy"). (MF ¶ 15). The American Fire Policy has its own Other Insurance provision, which reads:

**4.   Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.   Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b.   Excess Insurance**

**(1)** This insurance is excess over:

**(a)** any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

5

> **(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.
>
> **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

> **(2)** When this insurance is excess, we will have no duty under Coverages **A** and **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

> **(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
>
> > **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
> >
> > **(b)** The total of all deductible and self-insured amounts under all that other insurance.

> **(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

(*Id.* ¶ 16; ECF No. 29-10, Declaration of Michael J. Jones, Ex. G, American Fire Policy, CG 00 01 04 13 at 12–13). No other provisions in the American Fire Policy are relevant to this Motion.

### C.    **American Fire versus American Family**

From April 3, 2019 to August 10, 2020, American Fire and Hall sent five letters about Lauer's initial claim and, eventually, his Underlying Complaint. First, on April 3, 2019, Hall sent a letter to Trematore informing Trematore that Lauer's counsel contacted Hall regarding the alleged March 1, 2018 incident and requesting Trematore forward this information to its insurance carrier so it could defend Hall. (MF ¶ 19; ECF No. 29-13, Declaration of Wendy Tulowiecki, Ex. A). Next, on April 5, 2019, American Fire sent a letter to Trematore also alerting Trematore to Lauer's claim and asking Trematore to pass the letter on to its insurance carrier so it could "take over this claim on Hall's behalf." (MF ¶ 20; ECF No. 29-14, Declaration

of Wendy Tulowiecki, Ex. B). Then, on June 18, 2019, American Fire sent another letter to Trematore—this time also addressed to Connor Strong & Buckelew (Trematore's insurance agent)—formally requesting "Additional Insured coverage as well as defense and indemnification for [Hall]." (MF ¶ 21; ECF No. 29-15, Declaration of Wendy Tulowiecki, Ex. C). After that, on March 24, 2020, less than one month after Lauer filed his Complaint in the Underlying Action, American Fire sent a third letter—this time to Trematore, Connor Strong & Buckelew, American Family, and New Jersey Manufacturers Insurance—requesting and asserting the same Additional Insured coverage, defense, and indemnification for Hall, including notice that Lauer filed his Complaint in the Underlying Action. (MF ¶ 22; ECF No. 29-16, Declaration of Wendy Tulowiecki, Ex. D). Finally, on August 10, 2020, American Fire sent a fourth letter—this time just to Trematore, Connor Strong & Buckelew, and New Jersey Manufacturers Insurance—asserting and requesting the same. (MF ¶ 23; ECF No. 29-17, Declaration of Wendy Tulowiecki, Ex. E).

On August 25, 2020, Gallagher Bassett, on behalf of American Family, sent a letter to Wendy Tulowiecki, an American Fire Senior Claims Resolution Specialist, acknowledging receipt of American Fire's request for Additional Insured coverage, defense, and indemnification on Hall's behalf and denying the request. (MF ¶ 24; ECF No. 29-12, Declaration of Wendy Tulowiecki, ¶ 2; ECF No. 29-18, Declaration of Wendy Tulowiecki, Ex. F at 1). American Fire's counsel responded to that August 25 letter on March 8, 2021 arguing that Hall is an additional insured under the American Family policy and American Family owes a duty to defend and indemnify Hall. (MF ¶ 26; ECF No. 29-19, Declaration of Wendy Tulowiecki, Ex. G).

American Fire then filed its Complaint with this Court on March 31, 2021. (ECF No. 1). American Fire filed this Motion on October 6, 2022. (ECF No. 29). American Family opposed

the Motion on October 20, 2022. (ECF No. 30). American Fire replied on October 31, 2022.

(ECF No. 31, American Fire's Reply to Def. Opp'n ("Pl. Reply")).

## II.    LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the burden of showing the absence of a "genuine issue of material fact." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). The party may satisfy its burden by "produc[ing] evidence showing the absence of a genuine issue of material fact" or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes this showing, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

"When opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)). The Court's role is not to weigh the evidence and decide the truth, but to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In making that decision, "[a]ll facts and inferences are construed in the light most

favorable to the non-moving party," *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998),

and credibility determinations are for the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*,

974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   DISCUSSION

American Fire argues that its insured, Hall, qualifies as an additional insured under the

American Family Policy. It further argues that the American Family Policy is primary to the

American Fire Policy. Therefore, American Fire argues, American Family has the primary duty

to defend Hall in the Underlying Action. American Family disagrees and presents three main

arguments: (1) Hall does not qualify as an additional insured under the American Family Policy;

(2) regardless, even if Hall did, the American Fire Policy is primary to American Family's; and

(3) additionally, under *Burd v. Sussex Mutual Ins. Co.*, 267 A.2d 7 (N.J. 1970), the Court cannot

compel American Family to defend Hall in the Underlying Action because it already represents

Trematore.

For the reasons below, we agree with American Fire. We find that (1) Hall qualifies as an

additional insured under the American Family Policy, and, therefore, American Family owes a

duty to defend Hall in the Underlying Action; (2) *Burd* does not preclude American Family from

defending Hall; (3) the American Family Policy is primary to the American Fire Policy; and (4)

American Family owes American Fire reimbursement costs from August 25, 2020 to today's

date and from today until American Family takes over Hall's defense in the Underlying Action.

### A.      The Duty to Defend

The duty to defend contractually obligates insurers to defend their insureds against all

actions covered by their insurance policies. *Abouzaid v. Mansard Gardens Assocs., LLC*, 23

A.3d 338, 346 (N.J. 2011). Generally speaking, whether a duty to defend exists "requires review

of the complaint with liberality to ascertain whether the insurer will be obligated to indemnify the insured 'if the allegations are sustained.'" *Id.* (quoting *Danek v. Hommer*, 100 A.2d 198, 203 (N.J. Super. App. Div. 1953)). A court must find a duty to defend if "the complaint comprehends an injury which *may* be within the policy." *Id.* (quoting *Danek*, 100 A.2d at 203) (emphasis in original). Courts should resolve any doubts and ambiguity within the policy in favor of the insured. *Id.*; *see also Flomerfelt v. Cardiello*, 997 A.2d 991, 998 (N.J. 2010) (stating that courts resolve doubts in the insured's favor and ambiguity favors finding a duty to defend). In essence, this means "'potentially coverable' claims require a defense." *Abouzaid*, 23 A.3d at 346.

This does not mean, though, that *only* a complaint alleging a covered claim triggers the duty to defend. In fact, "[a]lthough courts generally look to the complaint to ascertain the duty to defend, the analysis is not necessarily limited to the facts asserted in the complaint." *Id.* at 347. To illustrate this principle, the *Abouzaid* court provided the example of how "[a]n insurer's duty to provide a defense may also be triggered by 'facts indicating potential coverage that arise during the resolution of the underlying dispute.'" *Id.* at 347 (quoting *SL Indus., Inc. v. Am. Motorists Ins. Co.*, 607 A.2d 1266, 1272 (N.J. 1992)). The principle that guides us is that looking beyond the underlying complaint "is said to align with the expectations of insureds, who 'expect their coverage and defense benefits to be determined by the nature of the claim against them, not by the fortuity of how the plaintiff, a third party, chooses to phrase the complaint against the insured." *Id.* (quoting *SL Indus.*, 607 A.2d at 1272).

Following that reasoning, we find, first, reading all the claims contained in all the Underlying Action's pleadings, that Hall is an additional insured covered under the American Family Policy. Consequently, we find that American Family has a duty to defend Hall. Second,

we find that *Burd* does not preclude American Family from defending both Hall and Trematore in the Underlying Action.

### 1.    Additional Insured and Duty to Defend

To determine whether Hall qualifies as an additional insured under the American Family Policy, we look to the policy's plain language and analyze it using standard contract interpretation principles. *See Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992). Neither party disputes the American Family Policy's or the Subcontract's language. The American Family Policy Additional Insured Endorsement reads, in pertinent part:

> **A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **1.** Your acts or omissions; or
>
> **2.** The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

(MF ¶ 11; American Family Policy, Am. Family 0075). The Schedule includes as additional insureds all organizations "As Required By Written Contract." (MF ¶ 12; American Family Policy, Am. Family 0075). The Subcontract between Hall and Trematore mandates that

> [Hall] shall be named as additional insured for all General Liability, Bodily Injury, Property Damages, Auto and Excess (Umbrella) Liability . . . . [Hall] shall be named as primary additional insured on all General Liability policies, including bodily injury, property damage, and excess liability policies, by endorsement from the insurance carrier attached to the insurance certificate.

(MF ¶ 8). Thus, taking the unambiguous plain meaning of this language, if Trematore's actions or Lauer's actions while acting on Trematore's behalf "caused, in whole or in part," Lauer's alleged injuries, then Hall qualifies as an additional insured under the American Family Policy.

Both parties' arguments on this point hinge on where the Court may look to decide whether the Underlying Action alleges that Trematore or Lauer himself, in whole or in part, caused Lauer's injuries—and therefore American Family may have to indemnify Hall for any damages resulting from liability. American Fire argues we may look to all the pleadings filed in the Underlying Action, including Hall's Answer and Third-Party Complaint. (Mot. at 12–17). American Family maintains we may only look to Lauer's Complaint. (Def. Opp'n at 7–13). We agree with American Fire.

Although the general rule is that a court should look to the underlying complaint when evaluating whether a duty to defend exists, not a single case that we have found or to which the parties have alerted us holds that a court *must* look to that complaint and *cannot* look elsewhere. American Family cites to several cases it contends stand for that proposition. (*See* Def. Opp'n at 9–10). But that is not what those cases hold. American Family's myopic reading of those cases, though understandable given its position, ignores that they reference only the general, base-level rule for evaluating whether a duty to defend exists. Although it makes perfect sense to use the underlying complaint as a starting point, no case—particularly not the cases American Family cites—explicitly forbids looking at other underlying pleadings when assessing the duty to defend. To the contrary, New Jersey law is clear that courts may look beyond the underlying complaint during its duty-to-defend analysis. *See Abouzaid*, 23 A.3d at 347; *SL Indus., Inc.*, 607 A.2d at 1272; *W9/PHC Real Estate LP v. Farm Family Cas. Ins. Co.*, 970 A.2d 382, 391 (N.J. Super. Ct. App. Div. 2009).

We believe this principle applies with equal force to facts that arise during the underlying dispute's discovery process as well as relevant asserted facts in an underlying answer or third-party complaint. This is so because looking at all the underlying pleadings conforms with the

guiding principle of ensuring that "the fortuity of how the plaintiff, a third party," chose to phrase his or her complaint does not shatter an insured's coverage expectations. *Abouzaid*, 23 A.3d at 347 (quoting *SL Indus.*, 607 A.2d at 1272).

Such an understanding makes even more sense within the Underlying Action's context. In the Underlying Action, New Jersey law precluded Lauer from suing Trematore directly because Trematore was Lauer's employer. New Jersey Workers' Compensation Act, N.J. Stat. Ann. § 34:15–8 (West 1980) (exclusive remedy provision); *Millison v. E.I. du Pont de Nemours & Co.*, 501 A.2d 505, 509 (N.J. 1985) (explaining the exclusive remedy provision). Thus, even if he wanted to, Lauer could not allege that Trematore caused his injuries, and he obviously would not allege that he was partly responsible himself. As such, given that New Jersey law explicitly permits looking beyond the complaint to establish a duty to defend, it stands to reason that we may look to Hall's Answer and Third-Party Complaint to see if there are allegations that could, if sustained, require American Family to indemnify Hall. We are not the first court to hold so. *See Mass. Bay Ins. Co. v. Hall Bldg. Corp.*, 2018 N.J. Super. Unpub. LEXIS 7858, at *19–27 (N.J. Super. Ct. Law Div. July 9, 2018); *see also WBI Energy Transmission, Inc. v. Colony Ins. Co.*, 56 F. Supp. 3d 1194, 1202 n.3 (D. Mont. 2014) (acknowledging facts that arose outside of the underlying complaint and citing to two other District of Montana cases which held that insurers could not ignore knowledge of facts not alleged in the complaint, including "through reference to pleadings" in addition to discovery).

*Massachusetts Bay* involved an essentially identical situation as here. In *Massachusetts Bay*, the underlying plaintiff was injured while working on a construction project in New Jersey, and he initiated a personal injury suit against the general contractor. *Mass. Bay Ins. Co.*, 2018 N.J. Super. Unpub. LEXIS 7858 at *4. He did not allege any claims against his employer, a

subcontractor. *Id.* at *5, 23. The court held that, even though the underlying plaintiff's complaint did not contain allegations that he or his employer "caused, in whole or in part," his injuries, the general contractor's third-party complaint did, and, based on the subcontract's and insurance policy's language, this was enough to find a duty to defend the general contractor in the underlying suit. *Id.* at *22–24.

We agree with the *Massachusetts Bay* court's reasoning, particularly as it applies in the New Jersey Worker's Compensation Act context. "Nothing in the [Workers Compensation Act] precludes an employer from assuming a contractual duty to indemnify a third party through an express agreement." *Mass. Bay Ins. Co.*, 2018 N.J. Super. Unpub. LEXIS, at *24 (quoting *Estate of D'Avila v. Hugo Neu Schnitzer E.*, 121 A.3d 388, 400 (N.J. Super. App. Div. 2015)). What's more, "it is irrelevant to a determination of the duty to defend [the general contractor] in the underlying action whether these common law third-party claims are sustainable since the duty to defend is triggered by the filing of *a pleading* that asserts a covered claim. The mere fact that [the general contractor]'s third-party complaint alleges that [its subcontractor (the underlying plaintiff's employer)] was a cause of plaintiff['s] alleged bodily injury was and is sufficient to require [the subcontractor's insurer] to provide [the general contractor] with a defense in the underlying litigation." *Id.* at *23–24 (emphasis added). For all the reasons set forth above, we concur.

Which brings us back to the all-important question presented here: are there allegations in the Underlying Action that Trematore's actions or Lauer's actions while acting on Trematore's behalf caused, in whole or in part, Lauer's injuries?

Yes. Hall's Answer contains allegations that Lauer at least partly caused his own injuries. (MF ¶ 9; Underlying Answer, Fourth Affirmative Defense). Additionally, Hall's Third-Party

Complaint contains allegations that Trematore at least partly caused Lauer's injuries. (MF ¶ 9; Underlying Third-Party Complaint, First Count ¶ 3). This is enough to find that Hall qualifies as an additional insured under the American Family Policy.

Although Trematore was not potentially liable for Lauer's injuries after Lauer filed his complaint, it is now that Hall has affirmatively defended by claiming that Lauer was contributorily negligent and brought Trematore in as a third-party defendant. Even more so, American Family is now on notice that allegations exist that Lauer and Trematore at least partly caused Lauer's injuries, thus pulling coverage into question. American Family may not "construct a formal fortress of [the plaintiff's complaint] and [] retreat behind its walls." *SL Indus., Inc.*, 607 A.2d at 1272. To find otherwise would deprive Hall of its contractual rights as an additional insured.

American Family calls Hall's affirmative defenses and Third-Party Complaint "self-help." (Def. Opp'n at 1). Whether they are or not is irrelevant. The law is clear that a duty to defend exists where potentially coverable claims exist against the insured with all doubts and ambiguities favoring the insured. *Abouzaid*, 23 A.3d at 346. If a court or jury found liability for Lauer's injuries and apportioned it in *any way* other than one-hundred percent liability to Hall, then the American Family Policy would obligate American Family to indemnify Hall for the claims against Hall. It does not matter whether this *will* happen, only that it *could*. *See id*. Because some possibility exists that this is so, we hold that American Family has a duty to defend Hall in the Underlying Action.

### 2.    *Burd* Does Not Save American Family

Despite American Family's contentions, *Burd* does not erase or preempt American Family's duty to defend Hall. *Burd* held that "when coverage, I.e., the duty to pay, depends upon

a factual issue which will not be resolved by the trial of the third party's suit against the insured, the duty to defend may depend upon the actual facts and not upon the allegations in the complaint." 267 A.2d at 9. To illustrate this, the *Burd* Court provided a helpful example:

> [F]or example, if a policy covered a Ford but not a Chevrolet also owned by the insured, the carrier would not be obligated to defend a third party's complaint against the insured which alleged the automobile involved was the Ford when in fact the car involved was the Chevrolet. The identity of the car, upon which coverage depends, would be irrelevant to the trial of the negligence action.

*Id.* at 10. The Court went on to say "[t]he sense of the covenant is to defend suits involving claims which the carrier would have to pay if the claimant prevailed in the action. . . . In short, the carrier's promise is to defeat or to pay a claim within the policy coverage." *Id.* Thus, the Court continued, "if the trial will leave the question of coverage unresolved so that the insured may later be called upon to pay, or if the case may be so defended by a carrier *as to prejudice the insured* thereafter upon the issue of coverage, the carrier should not be permitted to control the defense." *Id.* (emphasis added).

The problem in *Burd* was that coverage depended on whether the injuries Burd inflicted were intentional or just negligent because the policy contained an exclusionary clause for intentionally inflicted injuries. *Id.* Further, the plaintiff in the underlying suit alleged claims for both intentional injury and negligence. *Id.* Thus, if the court found a duty for the carrier to defend Burd in the underlying suit, the intentional injury exclusionary clause might incentivize the carrier to vigorously defend the negligence claim but not the intentional injury claim, because if the jury found liability for intentional injury, the carrier would not have to pay up. *See id.* ("If plaintiff pressed his claim of negligence, the coverage issue would remain open . . . [a]nd if plaintiff sought a judgment for intentional hurt, the carrier could not be expected to resist that basis of liability with the fervor or fidelity of an advocate selected by the insured.").

No such issue exists here. The pertinent question to resolve whether American Family must cover Hall's liabilities, if any, is whether Trematore or Lauer caused, in whole or in part, Lauer's injuries. Unlike the car example laid out by the *Burd* Court, a trial in the Underlying Action would resolve this question. Because Hall affirmatively pled that Lauer was contributorily negligent and pleaded in its Third-Party Complaint that Trematore proximately caused or contributed to Lauer's injuries, if any, a trial would resolve whether Trematore or Lauer caused, in whole or in part, Lauer's injuries.

Nor does the dual-claim issue presented in *Burd* appear here. There are not multiple claims asserted by Lauer in the Underlying Action, one of which American Family would defend with vigor to avoid making any payment, and the other which American Family might defend lackadaisically because an adverse finding would exclude the claim from American Family's coverage. The American Family Policy does not contain an analogous, relevant exclusionary clause like the one in *Burd*.

Finally, the Court does not see how, as American Family contends, American Family defending Hall in the Underlying Action would cause American Family to "prosecute a coverage against itself." (Def. Opp'n at 12). American Family's and Hall's interests are aligned. Presumably, Hall does not want a jury to find it liable. Similarly, it is safe to assume neither does Trematore. And, along the same lines, American Family likely does not wish to have to pay out any claims. Thus, all three parties' interests align: win the Underlying Action and have Hall found not liable. Only if Hall loses the Underlying Action would American Family have to potentially indemnify Hall's liability and, similarly, only if Hall loses would a jury possibly find that Trematore was partly liable for Lauer's injuries, too. This makes it fairly clear to the Court

that American Family would thus vigorously defend Hall to ensure it served its own, Hall's, and Trematore's interests.

More importantly, American Family representing both Hall and Trematore would not "prejudice" Hall, the insured. *See Burd*, 267 A.2d at 10. *Burd* did not concern itself with how representation might financially impact the insurer. If American Family believes the dual representation would prejudice American Family, that is not a *Burd* conflict. That is merely the natural result of how American Family drafted its policy.

As such, we hold that *Burd* does not wipe away American Family's responsibilities, and American Family still has a duty to defend Hall in the Underlying Action.

### B.     The Primary Policy

Having found that American Family has a duty to defend Hall in the Underlying Action, the next question is whether that duty is primary, co-primary, or excess to American Fire's duty to defend Hall. American Fire argues that the American Family Policy contains a pro rata other insurance clause, whereas the American Fire Policy contains an excess other insurance clause. (Mot. at 17–18). Therefore, American Fire argues, the American Family Policy is primary. (*Id.* at 18). On the other hand, American Family argues the supplemental endorsement to American Family's Other Insurance provision requires that for the American Family Policy to be primary, the Subcontract must have agreed that the American Family policy would be both primary and non-contributory. (Def. Opp'n at 14). Because the Subcontract agreed the American Family Policy would be primary but did not agree that it would be non-contributory, the Subcontract does not meet the endorsement's conditions, and the American Family Policy cannot be primary. (*Id.*). We agree with American Fire and find that the American Family Policy is primary to the American Fire Policy.

We begin by acknowledging that there is again no dispute between the parties about the existence or content of the language contained in either the American Family Policy or the American Fire Policy. There is, of course, dispute about their interpretation and the consequences therefrom, which we will discuss below, but the parties do not dispute the language itself.

As we address American Family's argument regarding its policy's supplemental endorsement, it behooves us to return to that endorsement's language:

> The following is added to the **Other Insurance** Condition and supersedes any provision _to the contrary_:
>
> **Primary and Noncontributory Insurance**
>
> This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:
>
> **(1)** The additional insured is a Named Insured under such other insurance; and
>
> **(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

(Def. Resp. to MF ¶ 4; American Family Policy, Am. Family 0074) (emphasis added).

American Family's argument misstates the import of its own policy's language. The endorsement says that it "is added to the **Other Insurance** Condition and supersedes any provision to the contrary." (_Id._ (emphasis in original)). The plain meaning of that language is that only if something in the original Other Insurance Condition contradicts the language here will this endorsement supersede it. Otherwise, this endorsement merely supplements—"is added to"—the original Other Insurance Condition.

Looking at what the endorsement adds to the policy, the language means what it says. If Hall meets conditions (1) and (2), then the American Family Policy is primary and American Family will not seek contribution from any other available insurance. It _does not_ say, that _only_ if these conditions are met will the American Family Policy be primary. The word "only" or any of

its many synonyms (e.g., exclusive, sole, lone, single, etc.) do not appear in the endorsement. As such, we read this endorsement not to contradict the original Other Insurance provision regarding primary versus excess coverage, but simply to supplement it and provide another way in which Hall could make the American Family Policy primary, not the only way.

To wit, American Family's Other Insurance Provision provides: "This insurance is primary except when Paragraph **b.** below applies." (MF ¶ 13; American Family Policy, Am. Family 0058) (emphasis in original). Again, we do not read the endorsement to contradict this language. We read it only to supplement it and modify it to read, in summary, that the American Family Policy is primary unless the Paragraph **b.** exceptions apply, and it is primary and non-contributory if Hall meets all the endorsement conditions.

We now address whether either of the two scenarios which make the American Family Policy primary apply here. First, American Family is correct that Hall did not satisfy the conditions laid out in the endorsement. Although Hall is a Named Insured under the American Fire Policy (the "other" insurance in this context) and the Subcontract agrees to make the additional insured coverage primary, (*see* MF ¶ 8), the Subcontract does not agree that American Family would not seek contribution from American Fire ("other insurance available to the additional insured"). As such, Hall only meets two of the three conditions required in the American Family Policy endorsement, and the American Family Policy is not primary and non-contributory on that basis.

But, as we have said, that is not the only way in which the combination of policies could make the American Family Policy primary. By its terms, the American Family Policy is also primary "except when Paragraph **b.** below applies." (MF ¶ 13; American Family Policy, Am. Family 0058) (emphasis in original). American Fire maintains that none of the Paragraph **b.**

exceptions apply here. (MF ¶ 14). American Family denies that fact, putting that issue in dispute. (Def. Resp. to MF ¶ 14). Although that fact is material because it will impact the outcome of this suit, the dispute is not "genuine" because, we find, a reasonable jury could not return a verdict in American Family's favor on this point.

To survive summary judgment, American Family may not simply deny a fact and then rely on some "metaphysical doubt" about the fact's veracity. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. American Family cannot rest on "mere allegations" but must point to actual facts in the record that contradict facts identified by American Fire. *See Corliss*, 247 F. App'x at 354. American Family has not done so. Instead, American Family only maintains that the Underlying Action is ongoing and some other, as yet unknown, hypothetical, metaphysical other insurance might also apply to Hall as an additional insured. (*See* Def. Resp. to MF ¶ 14). This is not enough.

Examining the facts presented and the language contained in Paragraph **b.** of American Family's Other Insurance provision, we find that none of these exceptions apply. (*See* American Family Policy, Am. Family 0058). Since none of those exceptions apply, the American Family Policy is, by its terms, primary.

This leaves the final question of whether the American Fire Policy is co-primary with or excess to the American Family Policy. Although the American Fire Policy's Other Insurance clause is identical to American Family's, how that language applies differs because of the difference between American Fire's relationship to Hall compared to American Family's. Hall is a named insured to American Fire, whereas Hall is an additional insured to American Family. Therefore, an exception applies under the American Fire Policy that does not apply under the American Family Policy. Paragraph 4b(1)(b) reads: This [American Fire] insurance is excess

over: Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured." (MF ¶ 16; American Fire Policy, CG 00 01 04 13 at 12–13). This describes the American Family Policy, which is primary and to which Hall was added as an additional insured to cover liability for damages arising out of the Cape May construction project's operations.

As such, we find that the American Fire Policy is excess to the American Family Policy. The two clauses are not mutually repugnant and reading them in this way follows the "basic tenet of the law of contracts by . . . giving effect to[] all of the language in a policy to determine its meaning and intent." *See W9/PHC Real Estate LP*, 970 A.2d at 397. Neither company is stuck with "anything more than it contracted to provide for its insured." *Id.* at 398 (quoting *Jones v. Medox, Inc.*, 430 A.2d 488, 492 (D.C. 1981)). Further, "[i]n the absence of controlling precedent, the specific language of the policies should be applied, and given its ordinary meaning." *Id.* That is what we have done here.

Since the American Family Policy is primary, and the American Fire Policy is excess, we find that American Family has the primary duty to defend Hall in the Underlying Action.

### C.  Reimbursement Costs

Since American Family owes a duty to defend its additional insured, Hall, and its policy is primary to American Fire's, American Family must now take over Hall's representation in the Underlying Action. Further, they must reimburse American Fire for the costs it incurred defending Hall when American Family rightly should have been. The question remains, though, when American Family's duty to defend kicked in and, thus, from what point American Fire should calculate its reimbursement costs.

"The general rule is that when the insurer has wrongfully refused to defend an action and is then required to reimburse the insured for its defense costs, its duty to reimburse is limited to allegations covered under the policy, provided that the defense costs can be apportioned between covered and non-covered claims." *SL Indus., Inc.*, 607 A.2d at 1280. This is because "[t]he duty to defend arises solely under contract. An insurer contracts to pay the entire cost of defending a claim [within the policy.]" *Ins. Co. of N. Am. v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1224 (6th Cir. 1980). Importantly, though, "the duty to defend is triggered by facts *known* to the insurer." *SL Indus., Inc.*, 607 A.2d at 1272 (emphasis in original). The law does not obligate the insurer to investigate whether something triggered coverage; rather, "the insured being sued is responsible for promptly conveying to its insurance company the information that it believes will trigger coverage." *Id.* Following this precept, the *SL* Court held that the insurance company need not reimburse its insured for the entire defense, but only for defense costs incurred from the point at which the insured notified the company of those facts that triggered coverage. *Id.* at 1273.

We see no reason why this same logic should not apply to one insurance company reimbursing another when the former company wrongfully refused to take up a defense when they had a primary duty to defend. Here, although Hall and American Fire sent several letters regarding Lauer's complaint and the Underlying Action, they did not inform American Family itself until its March 24, 2020 letter. But, when American Fire sent that letter, Hall had not yet filed its Answer and Third-Party Complaint in the Underlying Action. That happened on April 9, 2020. (MF ¶ 9). The next letter American Fire sent out is dated August 10, 2020, but it is not addressed to American Family. Perhaps an addressee passed the letter along, but the record does not show this.

Based on the record before us—none of which the parties dispute as far as the facts concerning whether the letters were sent, when they were sent and received, their addressees, and that they accurately reflect their contents—the August 25, 2020 response letter from Gallagher Bassett is the first point at which we can be sure that American Family knew about Hall's Answer and Third-Party Complaint. We have found the allegations against Lauer and Trematore in those pleadings triggered possible coverage and, thus, the duty to defend. Since the August 25, 2020 letter is the earliest we can be sure, based on the record, that American Family knew about Hall's Answer and Third-Party Complaint, and because American Family had no duty to investigate following American Fire's March 24, 2020 letter alerting American Family to the Underlying Action, we find that American Family's obligation to reimburse American Fire for its defense costs began on August 25, 2020.

As such, we find that American Family owes American Fire reimbursement costs from August 25, 2020 to today's date and from today until American Family takes over Hall's defense in the Underlying Action.

## IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** American Fire's Motion. An appropriate Order follows.


Dated: May 22, 2023                            /s/ Robert B. Kugler
                                               ROBERT B. KUGLER
                                               United States District Judge